**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**AVA STOUT**                                                                                      **PLAINTIFF**


**v.**                                   **CASE NO. 4:05-CV-01888 GTE**


**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**


## ORDER ON MOTION FOR SUMMARY JUDGMENT

Presently before the Court Defendant's Motion for Summary Judgment.[1]

**I.      Background**

The following facts are undisputed: Plaintiff Ava Stout has worked for the Social Security

Administration since 1975.  Since 1990, Ms. Stout has been a service representative in the Little

Rock, Arkansas office.  As a service representative, Ms. Stout's primary responsibility was

responding to inquiries from the public on questions relating to the administration of the Social

Security Act.  In 1999, Ms. Stout was diagnosed with depression and has received medication to

treat the depression since 1999.

In 2002, a Claims Representative Training (CRT) position opened.  The Social Security

Administration announced the vacancy for the position of Claims Representative trainee for the

field office in Searcy, Arkansas, under vacancy announcement No. 344-03 with an opening date

---

[1]The Court notes that Defendant raises additional arguments in its reply to Plaintiff's
Response to Defendant's Motion for Summary Judgment.  On February 16, 2007, the Court
informed the Plaintiff that it would consider these additional arguments, and offered Plaintiff the
opportunity to respond to Defendant's Reply.  Plaintiff filed her response on March 1, 2007.

of August 4, 2003 and a closing date of August 22, 2003.  A Claims Representative (CR) must

deal with the general public in preparing and processing claims for all types of social security

benefits.

Prior to applying for the claims representative training position, Ms. Stout sought the

advice of her operations supervisor, Vicky Steward.  Ms. Stout asked Ms. Steward whether Ms.

Steward thought Ms. Stout should apply for the position.  Ms. Steward advised Ms. Stout that

she felt that Ms. Stout should not apply as the claims representative position was extremely

stressful.  Ms. Steward advised Ms. Stout that she felt Ms. Stout would have difficulty in

performing the work of a claims representative.  Ms. Stout applied for the position and was

appointed to the position on September 8, 2002.

Ms. Stout was required, as were all selectees for a claims representative position, to

attend a technical training class in the Dallas Regional Training Center.  Retention in the claims

representative trainee position was subject to successful completion of the training class.  Ms.

Stout's training class commenced September 24, 2002.[2]

Prior to leaving Little Rock, Arkansas, to travel to Dallas, Texas, to attend the required

training course, Ms. Stout sought and received some training.  Ms. Stout had a difficult time

mastering the materials taught in the training course.  She was reminded by the Arkansas District

Manager (DM), Chuck Stovall, that she must pass the course in order to retain the claims

representative trainee position.  In November 2002, Ms. Stout returned to Little Rock for two

---

[2]The Court notes that although the facts admitted by both parties state that Ms. Stout training began in 2002, it is clear to the Court that this was simply a misstatement by the parties considering the chronology of events set forth in the statement of facts and the exhibits submitted by the parties.

weeks of on-the-job training.  Ms. Stout then returned to Dallas where she received a passing

score in the required training course.  She had a difficult time passing the required course work.

In December 2002, Ms. Stout returned to Little Rock and commenced working as a

claims representative trainee.  Lisa Morris and Vicky Steward were appointed to mentor Ms.

Stout.  Ms. Stout sought permission to work overtime.  Permission was denied because she was

unable to work independently.  On May 29, 2003, DM Chuck Stovall removed Ms. Stout from

the claims representative trainee position and placed her in a service representative position.  It

appears that beginning on June 16, 2003 until at least July 30, 2003, Plaintiff obtained notes from

her doctor recommending leaves of absence for her depression.

On July 18, 2003, Ms. Stout filled out her EEO Discrimination Complaint Form, which

appears to have been filed on July 25, 2003.   On December 19, 2005, Ms. Stout filed her

Complaint in this matter alleging that she was discriminated against on the basis of race, color,

and disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000 et seq., the Civil Rights Act of 1991, 42 U.S.C.  § 2000e-5(f)(3), 42 U.S.C. § 1985(3) Civil

Rights Act, 42 U.S.C. § 1981, and the Rehabilitation Act of 1973, 29 U.S.C. 701 et seq.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most

favorable to the non-moving party, there is no genuine issue as to any material fact, so that the

dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.

1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in

determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988)) (citations omitted)(brackets in original).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The plain

language of Rule 56© mandates the entry of summary judgment against a non-moving party

which, after adequate time for discovery, fails to make a showing sufficient to establish the

existence of an element essential to its case, and on which that party will bear the burden of proof

at trial. *Celotex Corp.*, 477 U.S. at 322.  In reviewing Plaintiff's claims, the Court bears in mind

that summary judgment is disfavored in employment discrimination cases, as such cases are

"inherently fact-based." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir.

2005).  Nonetheless, "summary judgment is proper when a plaintiff fails to establish a factual

dispute on an essential element of her case." *Id.*

## III. Discussion

### A. Reasonable Accommodation

"The ADA requires an employer to make reasonable accommodation to the known

physical or mental limitations of an otherwise qualified employee with a disability." *Miller v.

Nat'l Cas. Co.*, 61 F.3d 627, 629 (8th Cir. 1995) (citing 42 U.S.C. § 12112 (Supp. V 1993); 29

C.F.R. § 1630.9 (1994)).  "Before an employer must make accommodation for the physical or

mental limitation of an employee, the employer must have knowledge that such a limitation

exists." *Id*.  "The Interpretative Guidance on Title I of the ADA states that 'an employer [is not]

expected to accommodate disabilities of which it is unaware.'" Id. (citing 29 C.F.R. app. §

1630.9 (1994)).  "The logic of this proposition is overwhelming and has been affirmed repeatedly

by other courts construing both the ADA and the Rehabilitation Act of 1973." *Id*. at 629-30

(citing *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931-34 (7th Cir.1995); *Landefeld v.

Marion General Hospital, Inc.,* 994 F.2d 1178, 1181-82 (6th Cir.1993); *McIntyre v. Kroger Co.,*

863 F. Supp. 355, 358-59 (N.D. Tex. 1994); *Mazzarella v. United States Postal Serv.,* 849 F.

Supp. 89, 96-97 (D. Mass. 1994)). "In general, 'it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'" *Id*. at 630 (citing 29 C.F.R. app. § 1630.9). "[T]he Interpretative Guidance to the ADA states that '[w]hen the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation.'" *Id*. (citing 29 C.F.R. app. § 1630.9).

In *Miller*, the Eight Circuit upheld the district court's grant of summary judgment in favor of the employer on the plaintiff's claims under the Americans with Disabilities Act, 42 U.S.C. § 12101-12213 (Supp. V 1993), and the Missouri Human Rights Act, concluding that "since [the employer] did not know of [the plaintiff's] disability until after her employment was terminated, it would have been impossible for the company to have made that disability the basis for the termination." *Id*. at 628, 630. There, the plaintiff "disavowed that she suffered from any condition which would limit her capacity to perform her job, and failed to disclose her treatment for manic depression" on her employment application and questionnaire. *Id*. at 630. Also, in her deposition, the plaintiff conceded that the first indication she gave to her employer that she was manic depressive was in a letter she sent to the company more than a week after her employment had been terminated. *Id*. "Other than a single medical excuse from a nurse practitioner diagnosing her illness as 'situational stress reaction,' and releasing [the plaintiff] from work until October 23, [the plaintiff] provided [her employer] with no documentation concerning her illness, despite the company's repeated requests, until more than a week after the company terminated her employment." *Id*. The court found that "[t]o the extent [plaintiff's] symptoms were known to [her employer] prior to its termination of her employment, they were not 'so

obviously manifestations of an underlying disability that it would be reasonable to infer that [her] employer actually knew of the disability.'" *Id.* (citing *Hedberg,* 47 F.3d at 932, 934 (noting that attendant symptoms can make some disabilities more evident than others)).  "The ADA does not require clairvoyance." *Id.* (citing *Hedberg,* 47 F.3d at 934).

In this case, Plaintiff claims that she was discriminated against.  Plaintiff also alleges a violation of the Rehabilitation Act, 29 U.S.C. § 701, 704.  She argues that Defendant failed to accommodate her disability, severe mental depression. Defendant argues that Plaintiff never sought an accommodation for the impairment she now alleges.  Defendant argues that Plaintiff's supervisors deny any knowledge of the alleged disability, and therefore, could not have been requested to accommodate an impairment of which they were ignorant.  Thus, Defendants state that Plaintiff has no cause of action under the Rehabilitation Act

In support of this contention, Defendant cites the affidavit of DM Chuck Stovall, in which he was asked, "Were you aware of Complainant's Mental Handicap?  If so, how and when did you learn of it?".  Mr. Stovall replied, "No,"[3] and further states that "Throughout this affidavit there are many references to the complainant [Ms. Stout] [s]uffering with a mental disability.  To this date she has made no indication to any member of management of the same, nor has she submitted any documentation of the same."[4]  When asked, "If you know, what are the limitations

---

[3]Defendant's Exhibit 3, Stovall Aff. ¶ 63, Motion for Summary Judgment.

[4]Defendant's Exhibit 3, Stovall Aff. ¶ 63, Motion for Summary Judgment.

of Complainant's disability, or her assistive device or medication?," Mr. Stovall replied,

"UNAWARE OF EITHER."[5]

Defendant also relies on the affidavit of Vicki Steward, who also answered "No" to the

question "Were you aware of Complainant's Mental Handicap?  If so, how and when did you

learn of it?".[6]  When asked, "If you know, what are the limitations of Complainant's disability, or

her assistive device or medication?," Ms. Steward replied, "This is unknown to me."[7]

Similarly, in the affidavit of Joyce Trotter, who was an Assistant District Manager in

Little Rock from March of 2000 to August of 2003, she answered "No" to the question "Were

you aware of Complainant's Mental Handicap?  If so, how and when did you learn of it?".[8]

When asked, "If you know, what are the limitations of Complainant's disability, or her assistive

device or medication?," Ms. Trotter replied, "I have no knowledge of a disability, assistive

device, or medication."[9]

Defendant also states that Ms. Stout, in her testimony before the Equal Employment

Opportunity Commission (EEOC), admitted that she did not seek an accommodation until 2004,

which was after the occurrences which gave rise to the Complaint.  Specifically, when asked "So

this request for accommodation didn't come until 2004, which is well after the time period that

---

[5]Defendant's Exhibit 3, Stovall Aff. ¶ 13, Motion for Summary Judgment.

[6]Defendant's Exhibit 2, Steward Aff. ¶ 12, Motion for Summary Judgment.

[7]Defendant's Exhibit 2, Steward Aff. ¶ 13, Motion for Summary Judgment.

[8]Defendant's Exhibit 4, Trotter Aff. ¶ 12, Motion for Summary Judgment.

[9]Defendant's Exhibit 3, Stovall's Aff. ¶ 13, Motion for Summary Judgment.

this hearing is concerned with?," Ms. Stout replied, "Right. Because I kept trying to do my work. I wanted my job.  I didn't want to be disabled."  Defendant notes that Ms. Stout also testified about an accommodation given her during the period following her 2003 demotion from the CRT position to the SR position.  However, Defendant asserts that this testimony makes clear that Plaintiff makes no contention that she sought any accommodation prior to her demotion.

In her response, Plaintiff does not specifically point to any evidence that management knew of her disability.  Furthermore, it is not entirely clear whether the facsimile pages addressed to the Human Resources Department of Social Security from several physicians stating that Plaintiff is being treated for depression and recommending a medical leave of absence were actually sent.  Regardless, it is clear that the first facsimile is dated June 16, 2003, several weeks after Plaintiff's May 29, 2003, demotion.

However, after a thorough review of the record, the Court notes that Ms. Stout testified that she informed management of her depression in 1999 because she was "off some due to depression, and each time [she] would bring in a doctor's excuse.  It was known all throughout the office. . . . It should have been in my file.  I brought something to management to put in my file because I was going through some things and I didn't want them to look down upon me if I was off one day or they saw something different in my behavior.  Management knew.  All my supervisors knew."[10]  Lisa Morris, a claims representative and Ms. Stout's mentor, testified that Ms. Stout's mental problems or issues were "known in the office."[11]  However, Ms. Stout

---

[10]Exhibit 1 p. 41, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[11]Exhibit 1 p. 2, Morris' EEOC testimony, Plaintiff's Response to Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Response").

provides no proof of this assertion.  Furthermore, Ms. Stout states that she did not inform
management that she began therapy in November 2002 because she went back to Dallas and did
not have time to tell them.[12]  Even assuming that Plaintiff had informed management of issues
involving depression in 1999, there is no indication that management was aware of the extent of
her depression or that it was ongoing at the time of her demotion.  Plaintiff has presented
insufficient evidence to demonstrate that the Defendant had any notice of her alleged disability.
Therefore, summary judgment is appropriate regarding Plaintiff's claims under the Rehabilitation
Act.

### B.  Discrimination based on Disability

With regard to Plaintiff's disability discrimination claims, the ADA prohibits
discrimination "against a qualified individual with a disability because of the disability of such
individual."  *Thompson v. Bi-State Development Agency*, 463 F.3d 821, 824 (8th Cir. 2006)
(citing 42 U.S.C. § 12112(a); *Brunko v. Mercy Hosp.,* 260 F.3d 939, 941 (8th Cir.2001)).  Absent
direct evidence of retaliation, we must apply the *McDonnell Douglas*[13] three-part burden-shifting
analysis to Gilmore's claim.  *Id*. at 824-25 (citing *Baucom v. Holiday Cos.,* 428 F.3d 764, 766
(8th Cir. 2005)).  Under this burden-shifting framework, the Court must first determine whether
Stout has presented a prima facie case of discrimination; next, whether the Defendant rebutted
the prima facie case by articulating a legitimate, non-discriminatory reason for the action it took;

---

[12]Exhibit 1 p. 43, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[13]*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668
(1973).

and finally, whether Stout met her burden to prove Defendant's proffered justification was merely a pretext for discrimination. *Id.* at 825.

In order to establish a prima facie case of discrimination under the ADA, Stout is required to show that 1) she is disabled within the meaning of the ADA; 2) she is qualified to perform the essential functions of the job, with or without accommodation; and 3) she has suffered an adverse employment action due to her disability. *Thompson*, 463 F.3d at 825. However, since Plaintiff has presented no evidence that Defendant knew about Ms. Stout's alleged disability until after her demotion, it would have been impossible for the Defendant to have made the alleged disability the basis for her demotion. Therefore, summary judgment is also appropriate on Plaintiff's claims of discrimination based upon disability.

### C. Hostile Work Environment[14]

To establish a hostile work environment claim, Plaintiff must show (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic under Title VII, (4) the harassment affected a term, condition or privilege of employment, and (5) employer liability. *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005).[15] "To establish the fourth element, a plaintiff must be prove that the harassment was 'so severe or pervasive as to alter a term, condition, or privilege of employment.'" *Gilooly*, 421 F.3d at 738. "The conduct at issue must not be 'merely rude or

---

[14]As the Eighth Circuit has done, this Court will assume that disability-based cause of action for discrimination under a hostile work environment theory exists. *See Jeseritz v. Potter*, 282 F.3d 542, 547 (8th Cir. 2002).

[15]The Court notes, as does the Defendant that

unpleasant.'" *Id.* "A plaintiff must establish harassment that is 'so intimidating, offensive, or hostile that it poisoned the work environment.' " *Id.* "A plaintiff must be able to show that 'the workplace [was] permeated with discriminatory intimidation, ridicule, and insult'" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*; *Al-Zubaidy*, 406 F.3d at 1038. "Offhand comments and isolated incidents of offensive conduct (unless extremely serious) do not constitute a hostile work environment." *Burkett*, 327 F.3d at 662 (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 786-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).  The Court can determine "whether an environment is 'hostile' or 'abusive' ⋯ only by looking at all the circumstances[, which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Al-Zubaidy*, 406 F.3d at 1038.

Defendant argues that Plaintiff's claims are best summarized in the agency letter of September 22, 2003, which summarized Plaintiff's claims and advised her that if she had any questions or concerns regarding the claims identified she was to contact the Social Security Administration within ten days or the Social Security Administration would consider the claims properly identified.[16]  The letter states:

1.  The complainant claims that based on her age (over 40), mental disability (clinical depression) and race (Black), from August 2002, she has been subjected to ongoing harassment (non-sexual).  The complainant provides the following examples as illustrative of the treatment accorded her:

---

[16]Exhibit 5, Defendant's Motion for Summary Judgment.

a.   Her supervisor advised her that a temporary promotion opportunity to the position of Claims Representative would be too stressful for her.

b.   When the complainant received the temporary promotion, the supervisor denied her the opportunity for in-office training prior to the formal training.

c.   On those occasions when she called the home office while undergoing the formal training in Dallas, the complainant was harassed by the supervisor who would tell her that she had to pass the class in order to retain the temporary position.

d.   Upon her return from formal training, the supervisor constantly harassed the complainant about her lack of proficiency in doing on-the-job training work.

e.   The supervisor would routinely belittle, scream and demean the complainant, sometimes telling her that her performance would drag down the entire office's performance.  At times, the Assistant District Manager would join in with the supervisor in harassing the complainant.

f.   The District Manager (DM) ignored the treatment given to the complainant by the other managers.

g.   the complainant was denied opportunities to work overtime because she had been deemed unable to work independently.

2.   The complainant claims that based on her age, mental disability and race, on May 29, 2003, she was demoted to her former position, Service Representative.  The DM refused to give the complainant any documentation reflecting her demotion.[17]

It appears that Plaintiff essentially abandons this claim, as she does not directly address it in her Response to Defendant's Motion for Summary Judgment or her Response to Defendant's Reply.  Plaintiff provides no evidence that any comments or actions by the Defendant were based upon Plaintiff's race or disability.  Rather, assuming that Plaintiff's allegations are true, it

---

[17]Exhibit 5, Defendant's Motion for Summary Judgment.

appears that such "harassment" was actually advice provided at Plaintiff's request, instruction

provided by management to Plaintiff, general incivility of management toward Plaintiff, or

incivility of management toward Plaintiff as a result of management's opinion that plaintiff was

not performing her job satisfactorily.  Furthermore, taking the facts in a light most favorable to

the Plaintiff, Plaintiff fails to offer evidence of harassment that was "sufficiently severe or

pervasive to create an objectively hostile work environment."  *Wright v. Rolette County*, 417 F.3d

879, 885 (8th Cir. 2005).  No jury could reasonably conclude that Defendant's actions created a

hostile work environment.  The Court grants summary judgment on this issue.

### D.  Disparate Treatment[18]

In her Complaint filed in this Court, Plaintiff raises a disparate treatment claim by stating,

"Plaintiff was systematically denied the assistance of a mentor unlike persons similarly situated

to her outside of her protected class," and "Plaintiff was denied a reasonable accommodation to

modify the position of Claims Representatives unlike her co-workers outside of the protected

class demonstrating that race was a motivating factor in the denial of such request."  Also, in her

Response to Defendant's Motion for Summary Judgment, Plaintiff argues that summary

judgment is not appropriate because there is a genuine issue of material fact regarding Plaintiff's

disparate treatment claims with regard to disability and race.  Defendant replies that Plaintiff did

not raise disparate treatment in her administrative proceedings, and therefore, has failed to

exhaust her administrative remedies with regard to her claim of disparate treatment.  Defendant

---

[18]As Plaintiff only presented evidence of disparate treatment in her Response to
Defendant's Motion for Summary Judgment, it appears that Plaintiff is pursuing her racial
discrimination claims under a disparate treatment theory alone.

14

further argues that even if the Court finds that Plaintiff exhausted her administrative remedies with regard to her claim of disparate treatment, summary judgment is appropriate on this claim.

### 1. Exhaustion of Administrative Remedies

"A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court." *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). "A claimant must first timely file an administrative charge with the EEOC." *Id*. (citing 42 U.S.C. § 2000e-5(e); *Nichols v. Am. Nat'l Ins. Co,* 154 F.3d 875, 886 (8th Cir. 1998)). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id*. (citing 29 C.F.R. § 1601.12(b)). "If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because 'the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Id*. (citing *Nichols,* 154 F.3d at 887). "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Id*. (citing *Kells v. Sinclair Buick-GMC Truck, Inc.,* 210 F.3d 827, 836 (8th Cir. 2000); *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 223 (8th Cir. 1994)).

Although the Court will "liberally construe an administrative charge for exhaustion of remedies purposes, [the Court] also recognize[s] that 'there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo,* a claim which simply was not made.'" *Id*. at 635 (citing *Parisi v. Boeing Co.,* 400 F.3d 583, 585 (8th Cir. 2005) (quoting *Shannon v. Ford Motor Co.,* 72 F.3d 678, 685 (8th Cir. 1996))). Additionally, the Eight Circuit

has "considerably narrowed [its] view of what is 'like or reasonably related' to the originally

filed EEOC allegations." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006).

However, the Eighth Circuit does "not require that subsequently-filed lawsuits mirror the

administrative charges as long as the sweep of any subsequent judicial complaint is no broader

than the scope of the EEOC investigation which could reasonably be expected to grow out of the

charge filed in the EEOC complaint. *Id*. at 674 (internal quotations omitted).

In *Cottrill*, the Eighth Circuit held that the plaintiffs failed to exhaust their administrative

remedies with respect to their disparate treatment claims because the hostile work environment

claims were not broad enough to encompass disparate treatment claims.  443 F.3d at 635.

Furthermore, the court found that the disparate treatment claims did not arise from nor were they

reasonably related to the allegations of hostile work environment as alleged in the administrative

charges. *Id*. at 634-35.  In that case, the plaintiffs' EEOC charges alleged that plaintiffs

supervisor "created a hostile work environment by peeping into the women's restroom for years"

and that when she discovered the peephole, she reported it, her supervisor confessed and was

convicted of felony invasion of privacy. *Id*. at 635.  Plaintiff's EEOC charges contained no facts

concerning treatment of male employees, nor did the plaintiffs identify any adverse employment

action. *Id*. at 634.  The court stated that "[a]n investigation of the peeping activities of

[plaintiff's supervisor] would not reasonably be expected to uncover evidence of the condition of

the men's restroom."  Furthermore, the plaintiffs did not construe their district court complaint to

include claims for disparate treatment on the basis that the conditions of the women's restroom

were different from those of the men's restroom until they filed their opposition to the

defendant's motion for summary judgment. *Id.  See also Kells v. Sinclair Buick-GMC Truck,*

*Inc.*, 210 F.3d 827 (8th Cir. 2000) (holding that the plaintiff failed to exhaust administrative remedies with regard to his claim that he was unlawfully subjected to verbal harassment because such a claim was not reasonably related to his claims of discriminatory demotion and termination); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218 (8th Cir. 1994) (finding that plaintiff's claims of race discrimination were separate and distinct from her claims of retaliation). *But see Nichols v. American Nat. Ins. Co.*, 154 F.3d 875, 887 (8th Cir. 1998) (holding the district court erred in excluding evidence that was consistent with evidence of unwelcome sexual advances that were included in the plaintiff's claims because they were not outside the framework or scope of the administrative charges, but noting that the allegations were not a separate theory of discrimination and did not involve a distinct discriminatory action that was different in nature or distanced in time from the other claims).

Plaintiff's EEO Counseling Report,[19] a thirty-nine page document that she incorporated into her EEO Discrimination Complaint Form, does not contain any specific discussion of disparate treatment. The report does not discuss the training of other employees compared with her training, nor does it discuss the failure of management to reprimand employees for the same conduct. The individuals that Plaintiff now claims received different treatment, namely Amanda Miller (White), Yadira Fore (Hispanic), Matt Tollett (White), Theodore Thorson (White), and Ken Patton (White) are not named in Plaintiff's EEO Discrimination Complaint Form or in her EEO Counseling Report. Furthermore, the Social Security Administration's acceptance letter of September 22, 2003, discussed in Section C *supra*, which summarized Plaintiff's claims and

---

[19]Exhibit 2, EEO Counseling Report, Defendant's Reply to Plaintiff's Response.

advised her that if she had any questions or concerns regarding the claims identified she was to contact the Social Security Administration within ten days or the Social Security Administration would consider the claims properly identified,[20] contains no specific claim of disparate treatment.

However, the Court is not limited to the initial charge, but may consider the entire administrative record.  *See Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1100 (D. Minn. 2000).  During the EEOC investigation, Plaintiff stated in her October 23, 2003, affidavit: "the new CRT's that were selected, and CRT's that were hired off the street have been receiving office training, and they have not started CRT school yet,"[21] "CRT's are Magnolia Littles, Yadira Fore, James Jones, Mark Lewis and Joanna Jones,"[22] "We have 5 new CRT's, and they are being trained on things before they start their class,"[23] and "[t]he new CRT's are not disabled, 2 are white.  I did not have a fair period of training and help like they are being given. They are at present being training in many areas before school.  Even the employees that were promoted from this office, have been given help.  They are being treated different from me."[24] Furthermore, the affidavit presented to Plaintiff during the investigation specifically asks, "Why do you contend that you were treated differently because of your disability and race?".[25]

---

[20]Exhibit 5, Defendant's Motion for Summary Judgment.

[21]Exhibit 6 ¶ 22, Stout's Aff., Defendant's Motion for Summary Judgment.

[22]Exhibit 6 ¶ 23, Stout's Aff., Defendant's Motion for Summary Judgment.

[23]Exhibit 6 ¶ 35, Stout's Aff., Defendant's Motion for Summary Judgment.

[24]Exhibit 6 ¶ 64, Stout's Aff., Defendant's Motion for Summary Judgment.

[25]Exhibit 6 ¶ 35, Stout's Aff., Defendant's Motion for Summary Judgment.

At the EEOC hearing, Plaintiff testified that she asked her Regina Norwood, her old supervisor, for training prior to her formal training in Dallas, but that she was not the supervisor over the claims representative position.[26]  She also testified that Ms. Steward gave her service representative computation training, but that she needed claims representative computation training, but she "did not say anything to her . . . [because] she would have jumped on me saying I'm causing confusion in the office."[27]  However, Plaintiff also testified that during this time management told her that they were short-handed, but states that "the next three people that were service reps got promoted, they all went to their unit and learned new work and left us over there with four or five service reps,"[28] and being short-handed hasn't stopped other people from getting exposure to the CR job prior to going to class.[29]  Plaintiff admits that she received some training from Kathy Holsomback.[30]  Plaintiff also admits that she received an e-mail from Ms. Steward scheduling the training with Ms. Holsomback, which states, "If you need any additional training let me know."

Plaintiff further testified that she attended a training session presented by Amanda Miller, a white woman, on tickle lists.[31]  Plaintiff alleged that during that training session, Ms. Miller

---

[26]Exhibit 1 p. 51, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[27]Exhibit 1 p. 53, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[28]Exhibit 1 p. 53, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[29]Exhibit 1 p. 61, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[30]Exhibit 1 p. 56, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[31]Exhibit 1 p. 25-26, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

stated that she had a tickle list that was one year old that she did not even know she had.[32]

Plaintiff argued that she was only on the job for thirty days when her superiors brought the tickle

list to her attention, "but they never said a word to [Ms. Miller.] And that was part of what got

me demoted."[33]  Ms. Morris, Plaintiff's mentor, also testified that she was asked about her tickle

list and stated that she did not use it regularly, but she was not written up.[34]  Plaintiff testified that

Ted Thorson, a white male, has been in the office for ten years and has never been able to do his

job, but that Ms. Steward gets other people to do his work for him, rather than "doing him like

she did me."[35]

    Plaintiff also testified that Matt Tollett, a white male, was "the new claims rep that

came."[36]  Plaintiff and Lisa Morris testified that Mr. Tollett had a mentor without additional

duties that is not his supervisor.[37]  Felita Jackson was Mr. Tollett's mentor and she testified that

she did not have a full workload, and does not know of anybody else that has been co-mentored

by a supervisor other than Ms. Stout.[38]  Additionally, when Felita Jackson mentored Ms. Fore,

---

[32]Exhibit 1 p. 25-26, Stout's EEOC testimony, Defendant's Motion for Summary
Judgment.

[33]Exhibit 1 p. 25-26, Stout's EEOC testimony, Defendant's Motion for Summary
Judgment.

[34]Exhibit 1 p. 17, Morris' EEOC testimony, Plaintiff's Response.

[35]Exhibit 1 p. 35, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[36]Exhibit 1 p. 34-35, Stout's EEOC testimony, Defendant's Motion for Summary
Judgment.

[37]Exhibit 1 p. 35, Stout's EEOC testimony, Defendant's Motion for Summary Judgment;
Exhibit 1 p. 8, Morris' EEOC testimony, Plaintiff's Response.

[38]Exhibit 2 p. 8, Jackson's EEOC testimony, Plaintiff's Response.

Ms. Jackson did not have a full workload.[39]  Plaintiff further testified that Ms. Miller had a full-time mentor with restricted additional duties.[40]  Ms. Morris, Plaintiff's mentor, testified that she was not relieved of any of her workload when she was assigned to mentor Ms. Stout.[41]  She also testified that Ms. Stout's training was different than other people who had received training because Ms. Stout had two mentors, whereas other people only had one mentor that had a reduced workload.[42]

Defendant argues that although Mr. Stovall, Ms. Steward, and Ms. Trotter were asked about the opportunities that the Plaintiff had for training compared to the new trainees' opportunities, different opportunities for overtime between Ms. Miller and the Plaintiff, and different treatment of trainee Heather Dukes and the Plaintiff, the EEOC was investigating these alleged disparities only in relation to the harassment allegation and not with regard to any disparate treatment allegation.  The Court rejects this argument.  It is obvious that Plaintiff's affidavit placed the EEOC on notice that she alleged disparate treatment.  Furthermore, Plaintiff's initial EEOC complaint and the Social Security Administration's acceptance letter of September 22, 2003 contained broad allegations of discrimination based upon race and disability. Finally, the EEOC hearing testimony demonstrates that this issue was presented and investigated in the administrative process.

---

[39]Exhibit 2 p. 8, Jackson's EEOC testimony, Plaintiff's Response.

[40]Exhibit 1 p. 33-34, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[41]Exhibit 1 p. 3, Morris' EEOC testimony, Plaintiff's Response to Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Response").

[42]Exhibit 1 p. 7-8, Morris' EEOC testimony, Plaintiff's Response.

The Court finds that the sweep of the judicial complaint in this case is no broader than the scope of the EEOC investigation which could reasonably be expected to grow out of the charge filed in the EEOC complaint.  Therefore, the Court finds that Plaintiff exhausted her administrative remedies with regard to her disparate treatment claim.  However, the Court notes that Plaintiff seems to have abandoned her claims of disparities in opportunities for overtime, the additional training received by trainees hired after her demotion, and the disparate treatment of Ms. Dukes as these allegations are not discussed in Plaintiff's Response to Defendant's Motion for Summary Judgment.[43]

---

[43]The Court notes, however, that even if Plaintiff intended to continue to rely on these alleged instances of disparate treatment, the Court would still find that summary judgment is appropriate.  Plaintiff's allegation that disparities in opportunities for overtime existed between herself and Ms. Miller is not supported by any evidence.  In response to the question, "Was other similarly situation employees granted overtime?  If yes please list by position title, grade, age, disability and race," Plaintiff replied, "They told me No, you would have to check agency records to confirm the truth in this - Amanda Miller would be the employee CRT that would have worked overtime."  Exhibit 6 ¶ 34, Stout's Aff, Defendant's Motion for Summary Judgment. Plaintiff has not supplemented the record with any evidence of disparities in overtime. Furthermore, Ms. Steward states that "this is not true. . . . She worked Overtime for the first time in her career on 09/06/03 for two and one half hours."  Exhibit 2 ¶ 44, Steward's Aff., Defendant's Motion for Summary Judgment.

With regard to the additional training received by other trainees, it is clear that at least two of the trainees named are black. Exhibit 4, Defendant's Reply to Plaintiff's Response. Furthermore, it appears that some of these individuals were "new hires," and therefore, are not similarly situated to the Plaintiff.  Exhibit 3 ¶ 24, Stovall's Aff., Defendant's Motion for Summary Judgment.  Therefore, Plaintiff cannot prove that similarly situated employees, "who were not members of the protected group," were treated differently.

Finally, the disparate treatment of Ms. Dukes is alleged in Plaintiff's affidavit, but the allegations contained in that paragraph are vague and unsubstantiated.  Exhibit 6 ¶ 35, Stout's Aff., Defendant's Motion for Summary Judgment. Plaintiff has failed to supplement the record or argue this point in her response. Furthermore, it appears that Ms. Dukes is a black female. Exhibit 4, Defendant's Reply to Plaintiff's Response.  Thus, while the Court must view the facts in a light most favorable to Plaintiff, "mere allegations which are not supported with specific facts are not enough to withstand [a] motion" for summary judgment.  *Klein v. McGowan,* 198 F.3d 705, 709 (8th Cir. 1999). Therefore, these allegations, even if considered by the Court, would not survive summary judgment..

Furthermore, this case is distinguishable from *Cottrill*, 443 F.3d at 635.  In that case the court was faced with a situation in which "[a]n investigation of the peeping activities of [plaintiff's supervisor] would not reasonably be expected to uncover evidence of the condition of the men's restroom."  Here, the issue of disparate treatment was in fact investigated, as evidenced by the affidavits of the Plaintiff and management.  Furthermore, the plaintiffs in *Cottrill* did not construe their district court complaint to include claims for disparate treatment on the basis that the conditions of the women's restroom were different from those of the men's restroom until they filed their opposition to the defendant's motion for summary judgment. While Defendant contends that Plaintiff did not raise her disparate treatment claim in this lawsuit until she filed her Response to Defendant's Motion for Summary Judgment, it is clear to the Court that Plaintiff's disparate treatment claim was raised in her Complaint.

## 2.  Analysis

"To establish a disparate treatment claim, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was meeting the legitimate expectations as to his her duties; (3) he or she suffered an adverse employment action; and (4) 'circumstances give rise to an inference of discrimination as similarly situated employees, who were not members of the protected group, were treated differently.'" *Gilooly v. Missouri Dept. of Health and Senior Servs.*, 421 F.3d 734, 738-39 (8th Cir. 2005). "Once a plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate 'a legitimate, non-discriminatory reason for its adverse employment action.'" *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005). "If the employer meets its burden, 'the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination.'" *Id.*

First, Plaintiff alleges that disparities existed in mentoring. [44]   At the EEOC hearing, Plaintiff testified that Matt Tollett, a white male, was "the new claims rep that came."[45]   Plaintiff and Lisa Morris testified that Mr. Tollett had a mentor without additional duties that is not his supervisor.[46]   Felita Jackson was Mr. Tollett's mentor and she testified that she did not have a full workload, and does not know of anybody else that has been co-mentored by a supervisor other than Ms. Stout.[47]   Additionally, when Felita Jackson mentored Ms. Fore, a Hispanic woman, Ms. Jackson did not have a full workload.[48]   Plaintiff further testified that Ms. Miller had a full-time mentor with restricted additional duties.[49]   Ms. Morris, Plaintiff's mentor, testified that she was not relieved of any of her workload when she was assigned to mentor Ms. Stout.[50] She also testified that Ms. Stout's training was different than other people who had received training because Ms. Stout had two mentors, whereas other people only had one mentor that had a reduced workload.[51]   Lisa Morris opined that his was counterproductive because the supervisor

---

[44]Exhibit 1 p. 56, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[45]Exhibit 1 p. 34-35, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[46]Exhibit 1 p. 35, Stout's EEOC testimony, Defendant's Motion for Summary Judgment; Exhibit 1 p. 8, Morris' EEOC testimony, Plaintiff's Response.

[47]Exhibit 2 p. 8, Jackson's EEOC testimony, Plaintiff's Response.

[48]Exhibit 2 p. 8, Jackson's EEOC testimony, Plaintiff's Response.

[49]Exhibit 1 p. 33-34, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[50]Exhibit 1 p. 3, Morris' EEOC testimony, Plaintiff's Response to Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Response").

[51]Exhibit 1 p. 7-8, Morris' EEOC testimony, Plaintiff's Response.

instructed the Plaintiff incorrectly on processing a disability claim.[52]  Plaintiff further argues that the write backs were used as harassment to remove the Plaintiff from her training position, rather than being used for training purposes.

Defendant argues that even assuming that Plaintiff has presented a prima facie case of disparate treatment, Plaintiff has offered no proof that Defendant's proffered reasons for the demotion were pretextual.  Plaintiff states that when asked, "Did you ask the Complainant to resign from her position as CRT?  Did anyone else ask the Complainant to resign from her position?  If yes, why?," Mr. Stovall replied, "No, however, I gave her the opportunity to request her old job back.  I told her that her performance was not sufficient for me to keep her in the CRT position.  She declined, therefore I demoted her back to the SR position."[53]  Mr. Stovall explains that the decision to demote Plaintiff "was based totally on her inability to grasp and apply the technical knowledge necessary to do the CR job."[54]  Mr. Stovall explains that write backs "identify areas where improvement is needed.  They also serve as performance documentation in particular w[h]ere errors are routinely repeated.  They were used in my decision to demote."[55]  Ms. Steward states that when she asked the Plaintiff "if she needed me to go over things with her she would tell me she didn't understand when she made certain errors but she understood at that point and needed no more help."[56]  The Court acknowledges Defendant's

---

[52]Exhibit 3 ¶ 8, Morris' Aff., Plaintiff's Response.

[53]Exhibit 3 ¶ 31, Stovall's Aff., Defendant's Motion for Summary Judgment.

[54]Exhibit 3 ¶ 42, Stovall's Aff., Defendant's Motion for Summary Judgment.

[55]Exhibit 3 ¶ 46, Stovall's Aff., Defendant's Motion for Summary Judgment.

[56]Exhibit 2 ¶ 56, Steward's Aff., Defendant's Motion for Summary Judgment.

further argument that given the fact that Mr. Stovall, a black male, had promoted Plaintiff to the CRT position only months before now and it was he who determined she could not perform the duties, there is a strong inference that discrimination was not a motivating factor. *Arraleh v. County of Ramsey*, 461 F.3d 967 (8th Cir. 2006) ("[T]here is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time.").

Even assuming that Plaintiff has presented a prima facie case for disparity in mentoring, the Court finds that Plaintiff has failed to prove that the proffered justification is merely a pretext for discrimination. Plaintiff admits that she had a difficult time passing the required course work. Plaintiff does not deny that she made the errors highlighted in the write backs. Furthermore, the Court does not accept that the addition of a more experienced supervisor to the mentoring process is detrimental. Summary judgment is appropriate on this issue. Assuming that Plaintiff has presented a prima facie case for disparity in mentoring, the Court finds that Plaintiff has failed to prove that the proffered justification is merely a pretext for discrimination. Plaintiff admits that she had a difficult time passing the required course work. Plaintiff does not deny that she made the errors highlighted in the write backs. Furthermore, the Court does not accept that the addition of a more experienced supervisor to the mentoring process is detrimental, especially when Plaintiff complains that her other mentor was not allowed adequate time to mentor her. Summary judgment is appropriate on this issue.

Plaintiff also alleges that disparities existed in reprimanding. At the EEOC hearing, Plaintiff testified that she attended a training session presented by Amanda Miller, a white

26

woman, on tickle lists.[57]  Plaintiff alleged that during that training session, Ms. Miller stated that

she had a tickle list that was one year old that she did not even know she had.[58]  Plaintiff argued

that she was only on the job for thirty days when her superiors brought the tickle list to her

attention, "but they never said a word to [Ms. Miller.] And that was part of what got me

demoted."[59]

    The Court notes that Plaintiff's evidence that Ms. Miller was never reprimanded is weak,

as Plaintiff cites no statement from any person in management.  Regardless, Plaintiff presents no

evidence that management was aware of Ms. Miller's error.  However, even if management was

aware of the error and did not reprimand Ms. Miller, Ms. Morris, Plaintiff's mentor and a black

female, also testified that she was asked about her tickle list and stated that she did not use it

regularly, but she was not written up.[60]  Summary judgment is appropriate on this claim of

disparate treatment.

    Finally, Plaintiff claims that disparities existed in modifications of work duties.  Plaintiff

testified that Ted Thorson, a white male, has been in the office for ten years and has never been

able to do his job, but that Ms. Steward gets other people to do his work for him, rather than

---

[57]Exhibit 1 p. 25-26, Stout's EEOC testimony, Defendant's Motion for Summary
Judgment.

[58]Exhibit 1 p. 25-26, Stout's EEOC testimony, Defendant's Motion for Summary
Judgment.

[59]Exhibit 1 p. 25-26, Stout's EEOC testimony, Defendant's Motion for Summary
Judgment.

[60]Exhibit 1 p. 17, Morris' EEOC testimony, Plaintiff's Response.

"doing him like she did me."[61]  Ms. Jackson confirmed this testimony.[62]  Ms. Jackson's affidavit states that Theodore Thorson and Ken Patton,[63] both white males, are both claims representatives that are not functioning in the full range of the position.  It appears that Plaintiff argues that these two white men's positions were modified, but that she was not provided such accommodation.  Mr. Thorson's affidavit indicates that his job as claims representative was modified because he was suffering from Post Traumatic Stress Disorder.[64]  Furthermore, the first time Mr. Patton's name appears in the record is in the affidavit of Ms. Jackson dated September 27, 2006, and no details regarding Mr. Patton's modified position are provided.[65]  As discussed above, Plaintiff has not presented sufficient evidence that management was aware of her disability or that she requested any accommodation or modification of her position prior to her demotion.  Nor has Plaintiff produced sufficient evidence surrounding the modifications made for Mr. Thorson and Mr. Patton.  Therefore, Plaintiff has not demonstrated that these individuals were similarly situated to her, and summary judgement is appropriate.

Accordingly,

----

[61]Exhibit 1 p. 35, Stout's EEOC testimony, Defendant's Motion for Summary Judgment.

[62]Exhibit 2 p. 9, Jackson's EEOC testimony, Plaintiff's Response.

[63]While Ms. Jackson's affidavit refers to Ken Pattern, a review of Defendant's Exhibit 4 to its Reply to Plaintiff's Response reveals that the employee's name is "Ken D. Patton."

[64]Exhibit 5 ¶ 4, Thorson's Aff., Plaintiff's Response.

[65]  While the Court questions whether the claim of disparate regarding Mr. Patton is properly before the Court, even if the Court considers this claim, Plaintiff cannot survive summary judgment.

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (Docket # 3) shall be, and is hereby, GRANTED.  Plaintiff's Complaint is DISMISSED with prejudice.

IT IS SO ORDERED THIS 5th day of March, 2007.


/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE